CARMEN VÉLEZ RUIZ, ET AL., demandante y recurrida, *v.* ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandado y peticionario.

*Número:* O-80-631          *Resuelto:* 16 de noviembre de 1981

*Héctor A. Colón Cruz, Procurador General,* y *Lirio Bernal, Procurador General Auxiliar,* abogados del peticionario; *Cancio & Cancio,* abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Se trata de una acción de daños y perjuicios por impericia profesional médica instada contra el Estado Libre Asociado de Puerto Rico. Trabada la controversia y luego de concluido el descubrimiento de prueba, el tribunal designó un panel de arbitraje mediante orden al efecto al amparo de los Arts. 41.100 a 41.130 del Código de Seguros de Puerto Rico, 26 L.P.R.A. secs. 4110 a 4113.

La parte demandante presentó una moción en la que solicitó que se declarara inconstitucional toda disposición relativa al arbitraje compulsorio. El Estado se opuso.

El tribunal de instancia acogió el planteamiento de la parte demandante y declaró inconstitucional aquellas disposiciones de los Arts. 41.100 a 41.130 del Código de Seguros de Puerto Rico, 26 L.P.R.A. secs. 4110 a 4113, que se refieren al arbitraje compulsorio de toda disputa por impericia profesional médica ante un panel. Basó su resolución, entre otras cosas, en que el esquema legislativo interviene indebidamente con la función judicial en violación al mandato constitucional que reserva la función judicial sólo a la Rama Judicial.

A petición del Estado accedimos a revisar.

El 30 de mayo de 1976, la Asamblea Legislativa de Puerto Rico promulgó la Ley Núm. 74, conocida por Ley de Responsabilidad Profesional Médico-Hospitalaria, la cual se incorporó a nuestro Código de Seguros como los Arts. 41.010 a 41.160 (26 L.P.R.A. secs. 4101 a 4116). En ésta se creó un detallado esquema de arbitraje de toda reclamación judicial de daños y perjuicios por impericia profesional médica con un elemento distintivo: el panel de arbitraje. De acuerdo con los Arts. 41.100 a 41.130 (26 L.P.R.A. secs. 4110 a 4113), el procedimiento y diseño estatutario es el siguiente.

Se presenta la demanda bajo juramento ante la sala y sección del tribunal con competencia. Una vez se presenta la contestación a la demanda se procede al descubrimiento de prueba. Concluido el mismo el Juez Administrador designa un panel de arbitraje, el cual, una vez constituido, procederá a celebrar la vista del caso en sus méritos.

El panel le toma juramento a los testigos, recibe la prueba y adjudicada todo asunto de procedimiento y evidencia de conformidad con las Reglas de Procedimiento Civil y las Reglas de Evidencia.

Dentro de los sesenta días de concluida la vista el panel emite su decisión por mayoría de votos. La decisión consistirá de sus determinaciones de hechos, conclusiones de derecho, recomendaciones sobre daños y responsabilidad y

sus fundamentos. "La decisión del panel de arbitraje será final y sólo podrá ser revocada o modificada por [el] tribunal si luego de revisada la misma encontrare que: (a) las determinaciones de hechos incluidas en la decisión son claramente erróneas; o (b) la decisión no fue emitida conforme a derecho; o (c) no se llevaron a cabo los procedimientos necesarios para la emisión de la decisión." Art. 41.130, inciso (6), 26 L.P.R.A. sec. 4113.

En cuanto a la composición del panel la ley establece que "estará compuesto por tres miembros, un abogado que será su Presidente, un miembro de la profesión médica, que pertenecerá a la clase a la cual pertenezca la persona contra quien se haya [presentado] la acción y un representante del interés público que no será abogado ni profesional en el cuidado de [la] salud ni representante de institución para el cuidado de [la] salud". Art. 41.110 inciso (2), 26 L.P.R.A. sec. 4111, inciso (2). El inciso (3) de este artículo señala que los miembros del panel se seleccionarán de un listado preparado y aprobado por el Secretario de Salud.

El importe total de las dietas (que puede ser de hasta cien dólares diarios por panelista), así como los gastos en que incurra el panel serán sufragados por las partes. Sólo en caso de indigencia manifiesta es que puede eximirse a una parte de hacer el pago, situación que obliga a las demás partes en el pleito a asumir el pago que le correspondía a la parte insolvente.

En términos generales ésta es la estructura de arbitraje que establece la Ley de Responsabilidad Profesional Médico-Hospitalaria.

La llamada crisis de los seguros de responsabilidad profesional médico-hospitalarias que motivó a nuestra Asamblea Legislativa a promulgar la Ley Núm. 74 no parece ser evento local únicamente. Véanse, Gouldin & Gouldin, *The Medical Malpractice Insurance Crisis*, 3 Ohio North. U. L. Rev. 510 (1975) y Roth, *The Medical Mal-*

*practice Insurance Crisis: Its Causes, The Effects, and Proposed Solutions*, 44 Ins. Counsel J. 469 (1977).

En Estados Unidos los estados han afrontado la situación legislando específicamente para reglamentar las acciones de daños por impericia profesional. El panel de arbitraje parece ser el mecanismo preferido en este tipo de legislación pues para 1979, por lo menos veintiún estados lo habían adoptado, Comment, *Constitutional Challenges to Medical Malpractice Review Boards*, 46 Tenn. L. Rev. 607, 613, n. 19 (1979), y ya en diez de éstos, según afirma este comentario, el panel de arbitraje ha sido cuestionado judicialmente por razones constitucionales, entre éstas, porque usurpa la función judicial reservada a los tribunales. Véanse, también, Note, *Medical Malpractice Mediation Panels: A Constitutional Analysis*, 46 Fordham L. Rev. 322, 344–46 (1977); Comment, *Testing the Constitutionality of Medical Malpractice Legislation: The Wisconsin Medical Malpractice Act of 1975*, Wis. L. Rev. 838, 849–852 (1977); Muranaka, *Compulsory Medical Malpractice Insurance Statutes: An Approach in Determining Constitutionality*, 12 U. San Francisco L. Rev. 599 (1978).

■ Son los tribunales de justicia los llamados a resolver los casos y controversias que se presentan ante ellos. La propia Constitución dispone que "[e]l Poder Judicial de Puerto Rico se ejercerá por un Tribunal Supremo, y por aquellos otros tribunales que se establezcan por ley". Art. V, Sec. 1. La Asamblea Legislativa tiene la facultad de crear y suprimir tribunales, con excepción del Tribunal Supremo, y la de determinar su competencia y organización. Art. V, Sec. 2.

■ A tenor con la facultad que le confirió la Constitución la Asamblea Legislativa promulgó la Ley de la Judicatura de 1952. En ésta se creó un Tribunal General de Justicia compuesto por el Tribunal Supremo y por un Tribunal de Primera Instancia, el cual ejerce su jurisdic-

ción cuando las personas interesadas, no pudiéndose poner de acuerdo sobre sus derechos personales y de propiedad, acuden inicialmente al proceso judicial. La Regla 2 de Procedimiento Civil señala que un pleito se inicia con la presentación de la demanda en el tribunal. Es entonces cuando el Poder Judicial se ejerce y manifiesta.

En este punto las partes, luego de seguir el cauce procesal dispuesto por los distintos cuerpos de reglas, someten al juez la controversia, bien sea de hechos, de derecho o de ambas cosas, para que éste la resuelva. En el ejercicio de ese poder el juez participa de ordinario en tres etapas del proceso judicial. Primero, examina la verdad de los hechos; secundo, aplica las normas de derecho que procedan; y, tercero, determina el remedio a concederse a base de las alegaciones y la prueba. *Cf. Cedar Rapids, etc.* v. *Cedar Rapids Commun. Sch.*, 222 N.W.2d 391 (1974).

A manera de excepción, y no como norma general, la Regla 41 de Procedimiento Civil permite que el Tribunal encomiende a un comisionado algún asunto, si y sólo si "estuvieren envueltas cuestiones sobre cuentas y cómputos difíciles de daños o casos que envuelvan cuestiones sumamente técnicas o de un conocimiento pericial altamente especializado". Regla 41.2. Aunque la regla está concebida en términos permisibles ("El tribunal ... podrá nombrar ...") la discreción conferida, aparte de estar restringida por lo anterior, ha sido celosamente revisada por este Tribunal. *E.g., Meléndez* v. *Levitt & Sons of P.R.*, 104 D.P.R. 895 (1976); *Cestero* v. *Pérez de Jesús*, 104 D.P.R. 891 (1976); *Batiz* v. *Tribunal Superior*, 104 D.P.R. 41, 49 (1975); *Parkhurst* v. *Parkhurst*, 76 D.P.R. 212 (1954).

En caso de que un asunto sea debidamente encomendado a un comisionado, el informe que éste rinde no es final (excepto por estipulación de las partes). "El tribunal, después de oír a las partes, podrá adoptar el informe, o modificarlo, o rechazarlo en todo o en parte, o recibir evi-

dencia adicional, o devolverlo con instrucciones." Regla 41.5, inciso (b).

Existe otra excepción en la jurisdicción federal, similar a la del comisionado, que al igual que ésta ha superado el escrutinio del Tribunal Supremo de Estados Unidos. Se trata de la facultad que le ha dado el Congreso al juez de la corte de Distrito federal para que éste designe a un magistrado para que oiga y determine, en primera instancia, cualquier asunto pendiente ante la corte con anterioridad al juicio. 28 U.S.C. sec. 636(b)(1). En cuanto a ciertas mociones "dispositivas" (como por ejemplo, la moción de supresión de evidencia) el juez de distrito puede encomendarle al magistrado federal que celebre vistas —incluyendo vistas con el propósito de recibir y aquilatar evidencia— y que luego le someta propuestas determinaciones de hechos y recomendaciones para la disposición del caso. 28 U.S.C. sec. 636. Sin embargo, el magistrado no tiene facultad para hacer una determinación final ni obligatoria. Las partes tienen derecho a objetar las determinaciones del magistrado en cuyo caso el juez de distrito viene obligado a hacer una determinación *de novo* en cuanto a la porción objetada y, en todo caso, tiene discreción para aceptar, rechazar o modificar, en todo o en parte, las determinaciones o recomendaciones hechas por el magistrado. El juez puede incluso recibir evidencia adicional, devolver el caso al magistrado o sustraer nuevamente el asunto remitido a éste.

El Tribunal Supremo de Estados Unidos expresó que al aprobar la Ley Federal de Magistrados el Congreso estuvo consciente en cuanto a que estaba invistiendo de poder decisional a los magistrados. Por tal razón, el Congreso hizo claro que la Corte de Distrito tiene plena discreción para autorizar al magistrado a celebrar una vista para recibir y aquilatar la evidencia y que el magistrado actúa de forma subsidiaria a y en auxilio de la Corte de Distrito. "Por consiguiente, todo el proceso se lleva a cabo

bajo el total control y jurisdicción de la corte de distrito" y ". . . aunque la ley permite que el juez de distrito le confiera a las propuestas determinaciones de hechos y recomendaciones del magistrado 'aquel peso que [sus] méritos mande y que la sana discreción judicial requiera', *Mathews* v. *Weber* [423 U.S. 261, 275 (1976)], tal delegación no viola el Art. III [de la Constitución de Estados Unidos que trata sobre el Poder Judicial] en tanto y en cuanto la decisión final sea hecha por la corte de distrito." *United States* v. *Raddatz*, 447 U.S. 667, 681, 683 (1980).

Lo crucial de este esquema no es que sea el magistrado, en vez del juez, quien haga determinaciones de hechos pues ya desde *Crowell* v. *Benson*, 285 U.S. 22, 51 (1932), el Tribunal expresó que "no se requiere que, para mantener los atributos esenciales del poder judicial, todas las determinaciones de hechos en los tribunales constitucionales tengan que ser hechas por jueces". Lo crucial es que el juez retenga siempre su discreción para referir o no el asunto a un magistrado, que tenga la facultad de adoptar sus propuestas o recomendaciones así como la de rechazarlas, en todo o en parte, y que sea al fin de cuentas quien tome la decisión final. Su discreción incluye la de escuchar por sí mismo nuevamente el testimonio de testigos en caso de reclamos contradictorios sobre credibilidad y resolver a base de ello.(1) El esquema estatutario de la Ley Federal de Magistrados incluye procedimientos suficientes para alertar a la Corte de Distrito sobre si ejercer su discreción para celebrar una vista y ver el testigo por sí mismo. *United States* v. *Raddatz*, supra, págs. 680–681.

Ninguno de estos elementos de discreción e intervención judicial está presente en el esquema de encomienda forzosa al panel de arbitraje que crea la Ley de Responsabilidad Profesional Médico-Hospitalaria. De acuer-

---

(1) No obstante, la facultad del juez de hacer una determinación *de novo* no implica necesariamente la de celebrar una nueva vista. El juez puede decidir a base del récord ante el magistrado. *United States* v. *Raddatz*, supra.

do con la ley bajo consideración, la encomienda del asunto al panel arbitraje es mandatoria. El tribunal no tiene discreción para retener y ver algún caso que a su juicio no debiera ir al panel. Sucede siempre que la delegación de la función judicial es porque lo manda la ley y no porque el tribunal estime que es un caso excepcional. Esto, por supuesto, atenta contra la integridad del sistema judicial mismo.

█ Además, la ley también dispone que las decisiones del panel son finales y obligatorias tanto para las partes como para el tribunal. En el momento crítico del procedimiento judicial, que es el del juicio y adjudicación de la controversia, el panel, distinto a un comisionado o magistrado, deja de ser un asistente del tribunal y en clara usurpación de la función judicial se convierte de facto en el tribunal.

En *Wright* v. *Central Du Page Hospital Association*, 347 N.E.2d 736 (1976), el Tribunal Supremo de Illinois declaró inconstitucional la ley que creaba un procedimiento de arbitraje compulsorio mediante panel a base de que ello constituía un ejercicio indebido de la función judicial por personas extrañas a la judicatura. El panel de Illinois se componía de tres personas: un médico, un abogado y un juez. Las decisiones se tomaban por mayoría, lo que implicaba que la resolución de un asunto en particular pudiera tomarse por los otros dos funcionarios sobre la oposición del juez. Al igual que el nuestro, aquel panel también hacía determinaciones de hechos y conclusiones de derecho.

En cuanto al laudo en sí, el esquema estatutario de Illinois permitía que el mismo sirviera de base a la sentencia del tribunal si las partes estaban de acuerdo. No obstante, en caso de desacuerdo u objeción por parte de alguna de ellas, el pleito proseguía el procedimiento civil ordinario e iba a juicio en su fondo ante el tribunal. El laudo de arbitraje era inadmisible en evidencia.

Un año después se suscitó en Arizona la misma cuestión sobre la constitucionalidad del panel de arbitraje de dicho estado por varios fundamentos, entre los cuales se hallaba el relativo al ejercicio indebido de la función judicial. *Eastin* v. *Broomfield,* 570 P.2d 744 (1977). Pero distinguiendo el caso de *Wright,* el Tribunal Supremo expresó que el panel del estado de Arizona, contrario al de Illinois, tenía el propósito de promover las transacciones y su laudo podía ser presentado en evidencia aunque nunca podía servir de base a la sentencia del tribunal. El Tribunal Supremo concluyó que en Arizona el laudo era más bien una opinión consultiva que siempre podía ser rechazada por las partes, pues no era obligatoria para ninguna.

La situación de Puerto Rico es cualitativamente peor que la de Illinois y, por supuesto, distinta a la de Arizona. De hecho para 1977 ya se le atribuía a Puerto Rico la notable distinción de ser la única jurisdicción de Estados Unidos que poseía un procedimiento de arbitraje compulsorio que era forzosamente vinculante para las partes. White & McKenna, *Constitutionality of Recent Malpractice Legislation,* 13 Forum 312, 327 (1977). Y sostienen estos autores que si en Estados Unidos se adoptaran disposiciones similares a las nuestras, indudablemente acrecentaría el número de ataques constitucionales. (2)

Si bien el procedimiento de arbitraje implantado en la

---

(2) En su informe de 1977, la Comisión de Responsabilidad Profesional Médica de la American Bar Association expresó:

"A special note should be made of the new Puerto Rico statute. To the Commission's knowledge, it is the first law ever passed in an American jurisdiction which provides for *mandatory,* binding arbitration of malpractice claims. There is a clear constitutional problem in providing for mandatory arbitration. The Pennsylvania Supreme Court, when faced with a compulsory arbitration law, held that 'a statute, the effect of which is to compel the parties to submit to arbitration, is unconstitutional ... where the statute closes the courts to litigants and makes the decision of the arbitrators the final determination of the rights of parties. . . .' *In re Smith,* 381 Pa. 223, 112 A.2d 625 (1955)." [Énfasis en el original.] American Bar Association, *Report to the House of Delegates Commission on Medical Professional Liability,* pág. 38 y escolio 28, reproducido en *A.B.A. 1977 Annual Meeting Reports with Recommendations.*

mayoría de los Estados de la Unión es compulsorio, el laudo no lo es. Las partes tienen plena potestad para aceptarlo o rechazarlo y siempre queda a salvo el derecho a dirimir *de novo* la controversia ante juez o jurado según sea el caso. Puerto Rico, sin embargo, es la excepción pues, como hemos visto, el estatuto dispone expresamente que "la decisión del panel de arbitraje *será final*". El hecho de que la ley le reserva la facultad al juez para modificar el laudo no altera la situación porque, primero, las partes no pueden optar por no quedar vinculadas originalmente y, segundo, las causas de modificación no ofrecen un campo bastante amplio de intervención judicial en cuanto a la fase original de *adjudicación* de hechos y de derecho. La intervención judicial es muy restringida.

Sin entrar a considerar la validez del proceso de selección y nombramiento de los miembros del panel, éstos, con excepción del abogado, son legos en la aplicación del derecho procesal y probatorio y, aún más, del derecho sustantivo. Sin embargo, la ley les encomienda que apliquen las Reglas de Procedimiento Civil, las de Evidencia y que hagan conclusiones de *derecho*, recomendaciones de daños y de *responsabilidad civil* debidamente fundamentadas. No se pueden hacer conclusiones de derecho si no se conoce cuál es la norma de ley aplicable ni el modo en que los tribunales la han interpretado. El hecho de que uno de los miembros sea abogado nada significa pues en el panel las decisiones se adoptan por mayoría. La realidad sigue siendo que la ley le ha encargado a un panel de legos que interprete y aplique la ley en el curso de un procedimiento estrictamente judicial, lo cual perturba el ejercicio del Poder Judicial que la Constitución le ha reservado a los tribunales.

Tampoco puede equipararse la vista ante el panel como un procedimiento cuasijudicial ante un organismo administrativo. El panel de arbitraje no es un organismo administrativo. A pesar de ciertas similaridades el

panel no actúa como una junta administrativa ni sus determinaciones tienen el mismo efecto que las determinaciones administrativas. El panel de arbitraje es, en esencia, un nuevo estrato en el proceso judicial. Véase Comment, *The Constitutional Considerations of Medical Malpractice Screening Panels*, 27 Am. U. L. Rev. 161, 175 (1977). El panel tal y como ha sido implantado en Puerto Rico quebranta el Art. V de la Constitución del Estado Libre Asociado.

*Se dictará sentencia confirmando la resolución recurrida.*

El Juez Asociado Señor Martín no intervino. El Juez Asociado Señor Díaz Cruz disintió en opinión separada. El Juez Asociado Señor Negrón García concurre en el resultado.

—O—

Opinión disidente del Juez Asociado Sr. Díaz Cruz.

No considero que el sistema de panel de arbitraje para entender en acciones de daños por culpa o negligencia (mala práctica) contra profesionales en el cuidado de salud (Art. 41.100 y ss.) Código de Seguros, 26 L.P.R.A. sec. 4110 y ss.) perturbe o disminuya el ejercicio del poder judicial de los tribunales en grado impermisible bajo la Constitución. La integración del panel ordenada en 26 L.P.R.A. sec. 4111, por un abogado que será su Presidente, un miembro de la profesión médica perteneciente a la misma clase de la persona demandada y un representante del interés público que no será abogado ni profesional en el cuidado de la salud ni representante de institución dedicada a esa práctica, designados (que vale decir escogidos) por el Juez Administrador de la sala competente, provee a las partes un foro de excelencia, de igual idoneidad al tribunal de derecho que en el curso del juicio oye testimonio pericial o refiere a un comisionado, bajo la Regla 41 de Procedimiento Civil cuestiones técnicas o de naturaleza

pericial especializada. A tal punto el panel de arbitraje médico no es más que un comisionado colectivo, tres en vez de uno, con superior capacidad para insuflar justicia a sus determinaciones porque tiene la dirección de un abogado, el conocimiento especializado de un médico y un representante no comprometido del interés público que aporta al panel el valor de equilibrio que es la cualidad moderadora por excelencia del jurado.

En este diseño de panel de arbitraje médico, como en el más modesto de comisionado nada rinde la justicia. Por el contrario se enriquece y mejora con la versatilidad técnica, intelectual y social de sus componentes. Así visto en la fibra básica de su estructura, no me impresiona el rutinario y casi automático ataque constitucional que está a la espera de toda legislación reformista y que en este caso invoca precedentes de tribunales que han interpretado estatutos *vis à vis* Constituciones que no coinciden necesariamente con los nuestros.

A pesar de su referencia a un panel, la decisión final es del tribunal que "expedirá la resolución correspondiente", 26 L.P.R.A. sec. 4113(4), después de *revisar* la decisión del panel, con plena audiencia para la parte inconforme en la que podrá solicitar del tribunal su revocación o modificación basada en que (a) las determinaciones de hecho son claramente erróneas; o (b) la decisión no fue emitida conforme a derecho; o (c) no se llevaron a cabo los procedimientos necesarios para su emisión. En términos prácticos de implementación de justicia, frente al reservado poder revisor y fiscalizador del tribunal de la decisión del panel, no goza ésta de más finalidad que el informe de un comisionado. De ahí que reiteramos el criterio de que este panel en esencia es un examinador de pruebas que excede la facultad del comisionado sólo en número, tres en vez de uno, mas inseparablemente supeditado como éste al criterio judicial sobre la corrección de su laudo.

Este panel de arbitraje médico ha tenido buena expe-

riencia en nuestro país: ha provisto un foro altamente cualificado, promovido las transacciones, aliviado los tribunales de reclamaciones frívolas y todo ello con la más amplia oportunidad de presentar el caso, pues la ley hasta provee relevo de pago de dietas del panel a quien carezca de recursos económicos para sufragarlas; concede a las partes el derecho a objetar la designación de un miembro del panel, por causa justificada, que el tribunal sustituirá a su discreción, y finalmente establece recurso de revisión ante el Tribunal Supremo de la resolución del Tribunal Superior. 26 L.P.R.A. sec. 4114. ¿Acaso puede haber mejor garantía del debido proceso de ley?

Es difícil entender que dentro de la amplia facultad que a la Asamblea Legislativa confiere el Art. V, Sec. 2 de nuestra Constitución de 1952 para "crear y suprimir tribunales . . ." y para determinar "su competencia y organización", pueda tacharse de inconstitucional este órgano de auxilio a los tribunales, que no es producto de creación ni supresión, sino simple acto de *organización* en probado beneficio de la adjudicación de este tipo de reclamaciones. Al mismo infundado ataque estaría sujeto el proyecto para la *creación* de cortes de pueblo o de vecindario para conocer de controversias mínimas, y otra vez se presentaría la Constitución como rémora y obstáculo a reformas del sistema judicial y a la mejoría del método para dirimir controversias. A tan inesperada interpretación conduce el reclutamiento de los criterios de Iowa, Wisconsin, Tennessee e Illinois.

El panel de arbitraje médico no es más que un comisionado plural; su decisión carece de finalidad hasta obtener la aprobación del tribunal, luego de amplia audiencia de impugnación. Es un instrumento de auxilio en la adjudicación racional de este tipo de pleitos por nuestros jueces que retienen completo control del resultado final. Hace tiempo es principio inconmovible e incuestionado que el Poder Judicial no sufre detrimento porque personas que no

son jueces, en determinados casos hagan las determinaciones de hecho. *Crowell* v. *Benson*, 285 U.S. 22 (1932).

El ejercicio por la Asamblea Legislativa del poder constitucional para crear tribunales y reorganizar su competencia en este caso del panel de arbitraje médico, es de menor dimensión al utilizado en la institución de agencias administrativas como D A C O, Junta de Planificación, Oficina de Personal y otras donde se refiere la controversia a un órgano especializado antes que al tribunal. Bajo el mismo principio, podría instaurarse el arbitraje compulsorio en conflictos laborales. En resultado final, la Asamblea Legislativa en el caso que nos ocupa no ha hecho otra cosa que reclamar para este tipo de controversias la innegable utilidad de los organismos administrativos. "Es facultad exclusiva del legislador la de determinar qué tipo de organización se presta mejor para el desempeño de una función pública. Si el legislador prefiere una junta o un departamento o una corporación pública a un negociado, esa preferencia, salvo disposiciones constitucionales que *expresamente* la prohíban, es definitiva para los tribunales." *P.R. Telephone Co.* v. *Tribl. Contribuciones*, 81 D.P.R. 982, 1000 (1960). (Énfasis nuestro.)

Desde que nacimos a la profesión estamos viendo Comisionados a quienes se les encomienda expresamente oír la prueba y hacer determinaciones de hecho. No parece tan novedoso, sino sabia medida, encomendarlas a un panel de tres comisionados selectos.

Sostengo la constitucionalidad de la Ley y anularía la resolución de instancia.