# 2009 DTA 116

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE BAYAMÓN**
**PANEL VI**

FRANCISCO VALDÉS
Demandante-Apelante

v.

LEVITT HOMES DE PUERTO RICO, *ET ALS*
Demandados-Apelados

Núm. KLAN-2008-01635

San Juan, Puerto Rico, a 12 de agosto de 2009

Panel integrado por su Presidente, el Juez Rivera Román,
y los Jueces Coll Martí y Vizcarrondo Irizarry

Rivera Román, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

El señor Francisco Valdés demandó a Levitt Homes (Levitt) y otros por incumplimiento de contrato y daños y perjuicios, el 24 de noviembre de 1998. Alegó que en 1997 realizó un contrato uniforme de compraventa con Levitt, mediante el cual adquirió una residencia que tenía múltiples defectos, vicios de construcción y vicios ocultos. El inmueble en controversia era parte de la urbanización Mansión del Sol en Toa Baja, Puerto Rico.

El señor Valdés alegó que la propiedad en cuestión tenía una amplia gama de defectos, que incluían la Instalación incompleta de los gabinetes de la cocina y la colocación inadecuada de las lámparas en ciertos pasillos y *clósets*, calidad inferior de las instalaciones de plomería y electricidad del inmueble, entre otros. Argumentó el señor Valdés que todos los defectos y vicios identificados le impedían ocupar y disfrutar su propiedad.

Levitt contestó oportunamente la demanda y negó la mayoría de las alegaciones. El señor Valdés presentó una demanda enmendada, el 11 de abril de 2000, en la cual añadió otros defectos y vicios que alegadamente tenía el inmueble, los cuales impedían el disfrute pleno de su propiedad. Alegó, además, que tuvo que incurrir en gastos adicionales en remodelaciones para subsanar los defectos del inmueble. Esencialmente, el señor Valdés alegó en la demanda y en la demanda enmendada que Levitt incurrió en error en el diseño y la construcción de la propiedad y que esto le causó perjuicios, decepción, desencanto y arrepentimiento por haber comprado el inmueble.

La demanda enmendada fue contestada por Levitt. En la contestación se alegó, entre otras cosas, que no actuó culposa y negligentemente en la relación contractual con el demandante; que no existía nexo causal entre los daños alegados y los actos de Levitt; que los daños alegados no convierten la propiedad en impropia para su

uso; y que la mayoría de los defectos alegados en la demanda eran aparentes al momento de la compraventa, por lo que no cualifican como vicios o defectos ocultos.

Posteriormente, el señor Valdés asumió su propia representación y presentó una *Moción de Sentencia Sumaria*, el 16 de noviembre de 2000. Argumentó en la moción que no existía controversia de hecho en el caso y que fue víctima de falsa representación por parte de Levitt. Le solicitó al tribunal que le ordenara a Levitt el cumplimiento de lo pactado en el contrato de compraventa del inmueble y la corrección de todos los vicios ocultos, defectos y vicios de construcción que alegadamente tenía la propiedad; que compensara al señor Valdés una cantidad no menor de $300,000 por los daños y perjuicios sufridos y $20,000 de honorarios de abogado.

Levitt presentó una *Oposición a la moción de sentencia sumaria*. Basándose en la declaración jurada del ingeniero José Santana Fred, los informes periciales de los ingenieros Gregorio Hernández y Pedro Rivera Otero y prueba documental, Levitt alegó que existían hechos en controversia en el caso que impedían que se dictara una sentencia sumaria.

El juez de instancia declaró *no ha lugar* la moción de sentencia sumaria, el 27 de diciembre de 2000.

El caso fue referido al Negociado de Métodos Alternos para la Solución de Conflictos, mediante orden emitida el 12 de enero de 2001. Posteriormente, el caso continuó su trámite por la vía ordinaria.

El tribunal le ordenó al señor Valdés que anunciara su representación legal en treinta días. Como consecuencia de lo anterior, el señor Valdés presentó un recurso de *certiorari* ante el entonces Tribunal de Circuito de Apelaciones para revisar el dictamen interlocutorio del Tribunal de Primera Instancia. Se denegó la expedición del auto porque el recurso nunca se perfeccionó.

Mediante una resolución el 4 de febrero de 2002, el Tribunal autorizó al señor Víctor M. Valdés a representarse por derecho propio a pesar de que éste sólo estaba admitido para ejercer la práctica del derecho en el estado de Texas.

Así las cosas, el señor Valdés presentó una *Moción de Sentencia Sumaria Parcial* ante el Tribunal de Primera Instancia, el 24 de febrero de 2003. En ella básicamente se repitieron todas las alegaciones de la sentencia sumaria presentada en el 2000; se reiteró que no existen controversias en cuanto a los vicios y defectos que tenía la propiedad; se alegó que el inmueble estaba en estado de ruina funcional; y se solicitó que el tribunal le otorgara triple indemnización por las acciones de mala fe de Levitt en el caso. Levitt presentó una *Oposición a la Moción de Sentencia Sumaria Parcial*, en la cual adoptó todos los argumentos expuestos en la Oposición presentada en el 2001 y alegó nuevamente que los hechos materiales del caso estaban en controversia. El Tribunal de Primera Instancia denegó la moción.

El Juez de Instancia designó al Lcdo. Elliot Merced Montañez como Comisionado Especial en el caso, el 12 de febrero de 2004. La resolución expresa que la selección del Comisionado Especial se logró mediante acuerdo entre las partes. Se determinó que las controversias que serían atendidas por el Comisionado serían las siguientes:

"1. La alegación sobre vicios ocultos y en quién recae le responsabilidad, de existir las mismas.

2. De existir vicios de construcción, si los mismos constituyen una ruina.

3. De existir vicios ocultos, si los mismos imposibilitaron el uso de la propiedad.

4. Valor de daños." (Véase, Apéndice de la Oposición a la Apelación, págs. 517-518).

El Comisionado Especial celebró la inspección ocular en la propiedad, el 17 de enero de 2006. Luego, el Comisionado requirió al tribunal que aclarara su ejercicio y evaluación en el caso. Mediante resolución dictada el 2 de febrero de 2006, el tribunal reiteró las cuatro controversias que el Comisionado Especial debía atender en su informe. Además, añadió que para cumplir su encomienda, el Comisionado debía utilizar todas las fuentes de derecho aplicables.

Posteriormente, las partes presentaron en el Tribunal de Primera Instancia una *Moción Conjunta Solicitando Informe del Comisionado Especial*. Alegaron haberse reunido con el Comisionado Especial para precisar el proceso de evaluación que éste llevaría a cabo para preparar su informe, y para discutir los términos para la entrega y revisión del informe. Las partes le solicitaron al tribunal que emitiera una orden al Comisionado Especial para que informara el estado procesal del caso y la fecha en que notificaría su informe.

El Lcdo. Carlos X. Irizarry, quien se unió al pleito como representante legal del señor Valdés, presentó una *Moción solicitando relevo como representante legal de la parte demandante y cambio de dirección para cualquier notificación dirigida al licenciado Carlos X. Irizarry Rivera*, el 17 de julio de 2007. En dicha moción, el licenciado relató el historial del caso desde que asumió la representación legal del señor Valdés. Alegó que le explicó al señor Valdés los acuerdos logrados y que éste prescindió de sus servicios, por lo cual se negó a firmar el acuerdo transaccional elaborado entre las partes. De hecho, en la propuesta del acuerdo, el señor Valdés le escribió un mensaje con marcador al abogado en el mismo documento mediante el cual lo relevaba de sus labores. Debido a esta situación, el licenciado Irizarry solicitó su relevo como representante legal de la parte demandante.

Levitt presentó una *Moción Urgente Solicitando Vista Transaccional*, el 18 de julio de 2007. Alegó que las partes habían informado al tribunal en la Conferencia con Antelación al Juicio que habían acordado transigir el caso extrajudicialmente. Añadió que sólo restaba que las partes firmaran la Estipulación Conjunta de Desistimiento Voluntario y el Acuerdo de Transacción y Relevo Confidencial. No obstante, alegó que el día siguiente a la vista, el licenciado Carlos X. Irizarry, representante legal del señor Valdés, le informó que el señor Valdés había cambiado de opinión y le había pedido la renuncia a su abogado. Levitt le solicitó al tribunal que citara a las partes a una vista transaccional para concluir el caso y que le impusiera al señor Valdés el pago de honorarios de abogado.

El Tribunal de Primera Instancia emitió una resolución el 23 de julio de 2007, mediante la cual denegó la petición de relevo presentada por el licenciado Irizarry y citó a las partes a una vista.

El señor Valdés presentó una *Moción solicitando pronunciamiento en derecho*, el 10 de agosto de 2007. En dicha moción alegó el demandante que el tribunal debía emitir un pronunciamiento en derecho, pues el Comisionado Especial no había tomado en consideración las enmiendas a la teoría de la parte demandante que surgían del Informe de Conferencia con Antelación al Juicio. Se le solicitó al tribunal que declarara enmendadas las alegaciones y que determinara el derecho aplicable a los hechos del caso en cuanto a si hubo incumplimiento de contrato por parte de Levitt. Levitt presentó por su parte una *Oposición a moción solicitando pronunciamiento en derecho*. En dicha moción le solicitó al tribunal que no permitiera la enmienda tardía a la demanda; que se negara a hacer pronunciamientos de derecho en esa etapa de los procedimientos; y que le impusiera al demandante el pago de costas y honorarios.

El tribunal celebró una vista, el 1 de octubre de 2007, en la cual hizo constar que el caso estaba listo para dictar sentencia, por virtud de que el Comisionado ya había sometido su informe. Además, el tribunal relevó al licenciado Carlos X. Irizarry de la representación del señor Valdés.

Luego de múltiples trámites procesales adicionales, el Tribunal de Primera Instancia emitió una resolución, el 3 de enero de 2008. En dicha resolución se denegó una moción de sentencia sumaria presentada el 14 de

noviembre de 2007 por el señor Valdés, se adoptó el informe del Comisionado Especial en todas sus partes y se le ordenó a las partes a reunirse para estimar los costos de reparación señalados en el informe para comunicarlos al tribunal.

Como consecuencia de lo anterior, el señor Valdés presentó una moción en la cual se solicitó que el tribunal emitiera una sentencia conforme a las alegaciones de autos. En la moción, el señor Valdés le informó al tribunal que no podía participar de un acuerdo transaccional con Levitt, por virtud de una nueva evidencia que surgía de un informe hecho por Iván Montes, un perito en inspección de viviendas. Alegó que dicho informe demostraba que el informe del Comisionado Especial no resolvía las controversias planteadas en la Conferencia con Antelación al Juicio, por lo que hace imposible la estimación de costos según el informe del Comisionado. Levitt presentó su oposición a la anterior moción en la cual le solicitó al tribunal que emitiera sentencia conforme al informe del Comisionado Especial y le impusiera a la parte demandante severas sanciones económicas.

El Tribunal de Primera Instancia emitió una resolución el 22 de abril de 2008 mediante la cual le ordenó al señor Valdés que acreditara las razones por las cuales no se debía dictar sentencia según el informe del Comisionado Especial. El señor Valdés presentó una moción según las instrucciones del tribunal y Levitt presentó una oposición a dicha moción.

Posteriormente, el Tribunal de Primera Instancia emitió sentencia, el 26 de septiembre de 2008, en la cual acogió todas las recomendaciones contenidas en el informe del Comisionado Especial. En la sentencia, el tribunal expuso que el demandante no mostró razón válida alguna para apartarse de las recomendaciones hechas por el Comisionado Especial.

El señor Valdés recurrió al Tribunal de Apelaciones mediante recurso de apelación. Alegó que erró el Tribunal de Primera Instancia al acoger todas las recomendaciones del Comisionado Especial; emitir una sentencia que exime a Levitt de cumplir con lo pactado en el contrato de compraventa; y al no emitir un pronunciamiento sobre la validez del contrato de compraventa celebrado entre las partes.

Levitt presentó un alegato en oposición a la apelación. Contando con la comparecencia de las partes y el informe del Comisionado Especial, procedemos a resolver.

## II

### 1. La figura del Comisionado Especial

La Regla 41.1 de Procedimiento Civil reconoce la autoridad del Juez para nombrar un Comisionado Especial para auxiliar en la solución de un caso. 32 L.P.R.A. Ap. III. El Comisionado Especial es un funcionario que designa el tribunal y en quien delega determinados poderes para que formule determinaciones de hechos o conclusiones de derecho en un proceso. R. Hernández Colón, *Derecho Procesal Civil*, 4ta. ed., Lexisnexis, San Juan, 2007, sec. 3701, pág. 305.

Según la mencionada regla, "la palabra comisionado incluye un árbitro, un auditor y un examinador". 32 L. P.R.A. Ap. III. No obstante, el tribunal puede designar a cualquier persona para ejercer este cargo, ya que la persona se seleccionará de acuerdo con la misión que se le va a encomendar. Hernández Colón, *op cit.,* pág. 305.

El comisionado se designa para que haga investigaciones, intervenciones, o determinaciones para fines del proceso. Hernández Colón, *op cit.,* sec. 3702, pág. 305. La labor de árbitro se manifiesta cuando el tribunal le otorga la facultad al comisionado de decidir entre las posiciones contrapuestas entre las partes. Hernández

Colón, *op cit.,* sec. 3702, pág. 305.

La encomienda de un asunto a un comisionado en el Tribunal de Primera Instancia debe ser un acto excepcional; se debe hacer solamente cuando estuvieren envueltas en el caso cuestiones sobre cuentas y cómputos difíciles de daños, o casos que envuelvan cuestiones sumamente técnicas o que requieran un conocimiento pericial altamente especializado. Regla 41.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Véase también, *Mayagüez Hilton Corp. v. Betancourt,* 156 D.P.R. 234, 258 (2002).

El tribunal puede especificar o limitar los poderes del comisionado, puede requerirle que informe sobre determinadas cuestiones litigiosas, que haga ciertos actos, o que solamente reciba la prueba. Además, el tribunal deberá fijar un término razonable para que el comisionado rinda su informe. Regla 41.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

Por otra parte, el comisionado tendrá y deberá ejercitar el poder de regular los procedimientos en las vistas que se celebren ante él o ella; y puede tomar cualquier medida o realizar cualquier acto necesario para el cumplimiento eficiente de sus deberes, sujeto a las órdenes del tribunal. Regla 41.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III. También tiene la facultad de exigir la presentación de cualquier documento pertinente; decidir sobre la admisibilidad de prueba, sujeto a las órdenes del tribunal; y citar, juramentar y examinar testigos. Regla 41.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Además, si así se le solicita, podrá hacer un récord de la prueba ofrecida y excluida de los procedimientos de la misma forma y sujeto a las mismas limitaciones dispuestas en las Reglas de Evidencia de Puerto Rico. Regla 41.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III. No obstante lo anterior, el Comisionado Especial está limitado por las facultades que el tribunal le conceda en la orden; no puede excederse de esas facultades aunque contara con el consentimiento de las partes. *Meléndez v. Levitt & Sons of P.R.,* 104 D.P.R. 895, 904 (1976).

El finalizar sus labores, el comisionado deberá rendir un informe al tribunal en la fecha en que señala la orden. Este informe deberá incluir todos los asuntos que el tribunal le encomendó, incluyendo determinaciones de hechos y conclusiones de derecho, si así lo especificaba la orden. Hernández Colón, *op cit.,* sec. 3706, pág. 307. A estos efectos, la Regla 41.5 de Procedimiento Civil establece en lo pertinente lo siguiente:

"(a) Contenido y presentación. El comisionado preparará un informe sobre todos los asuntos encomendádosle por la orden del tribunal y si se le exigiere que haga determinaciones de hechos o conclusiones de derecho, las expondrá en el informe, el cual presentará en la secretaría del tribunal en la fecha señalada en la orden según lo dispuesto en la Regla 41.3; y, a menos que de otro modo se disponga, acompañará una relación de los procedimientos, un resumen de la prueba y los *exhibits* originales. El secretario notificará inmediatamente su presentación a todas las partes.

(b) Aprobación. En todos los casos, el tribunal aceptará las determinaciones de hechos del comisionado, a menos que sean claramente erróneas. Dentro de diez (10) días siguientes a la notificación de haberse presentado el informe, cualquiera de las partes podrá notificar a las otras sus objeciones por escrito a dicho informe. [...] **El tribunal, después de oír a las partes, podrá adoptar el informe, o modificarlo, o rechazarlo en todo o en parte, o recibir evidencia adicional, o devolverlo con instrucciones.**

(c) Estipulación en cuanto a las determinaciones de hechos. El efecto del informe del comisionado será el mismo, hayan o no consentido las partes a que el asunto sea encomendado a un comisionado; pero cuando las partes estipulen que las determinaciones de hechos del comisionado sean finales, solamente se considerarán en lo sucesivo las cuestiones de derecho que surjan del informe." (Énfasis suplido). 32 L.P.R.A. Ap. III.

Como hemos visto, luego de recibir el informe del comisionado y las objeciones de las partes, el tribunal puede actuar de diferentes formas. El tribunal puede aceptarlo y adoptarlo como suyo, modificarlo, o rechazarlo

todo o en parte. *In re: Soto López*, 135 D.P.R. 642, 646 (1994); Hernández Colón, *op cit.,* sec. 3706, pág. 308. A estos efectos, el Tribunal Supremo ha expresado lo siguiente:

"[E]n caso de que un asunto sea debidamente encomendado a un comisionado, el informe que éste rinde no es final (excepto por estipulación de las partes)." *Vélez Ruiz v. E.L.A.,* 111 D.P.R. 752, 757 (1981).

La norma que debe guiar el tribunal en esta encomienda es la siguiente: "[l]as determinaciones de hechos serán sostenidas, a menos que sean claramente erróneas". Hernández Colón, *op cit.,* sec. 3706, pág. 308. Sin embargo, en los casos en que las partes hayan estipulado que las conclusiones que haga el comisionado serán finales, el tribunal pasará por alto las cuestiones de hechos y solamente considerará las cuestiones de derecho. Hernández Colón, *op cit.,* sec. 3706, pág. 308.

El Tribunal Supremo ha expresado que cuando las determinaciones de hecho que hacen los comisionados especiales estén basadas en la prueba testifical, éstas merecen su mayor deferencia. Además, cuando dichas determinaciones están sostenidas por la prueba que obra en el expediente, el tribunal no deberá intervenir con ellas, excepto cuando se demuestre pasión, prejuicio, parcialidad o error manifiesto en la apreciación. *In re: Rodríguez Feliciano*, 165 D.P.R. 565, 579 (2005); *In re: Soto López, supra*, pág. 646.

### III

Luego de un examen objetivo y detallado del expediente del caso y del Informe del Comisionado Especial, concluimos que el Tribunal de Primera Instancia actuó correctamente al dictar su sentencia y acoger las recomendaciones que aquél incluyó en su informe.

El informe del Comisionado Especial que acogió el Juez de Instancia examina individualmente todas las reclamaciones presentadas por el señor Valdés en la demanda enmendada. El Comisionado ponderó los informes de los peritos de las partes, realizó inspecciones oculares y llegó a sus propias conclusiones. El Informe que presentó recoge la discusión y análisis y las conclusiones de hechos y recomendaciones. El Juez de Instancia evaluó y acogió el informe del Comisionado y no vemos razón jurídica que justifique alterar esa decisión.

En específico, las recomendaciones del Comisionado incluyeron diversas alegaciones de la demanda enmendada. Por ejemplo, el Comisionado Especial acogió la opinión del perito de Levitt en torno a la reclamación de los gabinetes de cocina, quien había expresado no encontrar error de diseño en dichos gabinetes.

Se descartó la reclamación de error de diseño del clóset del pasillo, por la localización peligrosa de la lámpara ubicada frente a su puerta, pues los informes de los peritos de la parte demandante no proveyeron los criterios necesarios para llegar a esa conclusión. De igual manera, se descartó la reclamación en cuanto al tamaño del área para la instalación de la lavadora y secadora. El Comisionado Especial expresó que ninguno de los peritos de la parte demandante entró a considerar esta reclamación. Solamente el perito de la parte demandada evaluó esta alegación y sugirió que lo correcto era determinar si el espacio fue construido de conformidad con los planos de construcción, no según las dimensiones de un equipo en particular. El Comisionado expresó compartir esta opinión, por lo cual se descartó esta reclamación.

En cuanto a la reclamación referente al escape de agua del baño del cuarto principal de la residencia, el Comisionado Especial concluyó que el problema fue corregido. Además, la alfombra y el gabinete que sufrieron daños como consecuencia de este problema fueron sustituidos.

Se expresó en el informe que no se recibió prueba pericial ni se puso en posición en la inspección ocular para evaluar la reclamación de los tubos eléctricos de media pulgada sin alambrar, por lo que se descartó esa reclamación.

El problema referente a la instalación de un panel de distribución inadecuado no fue atendido por el Comisionado porque ya había sido resuelto. El informe sí refleja que la caja del panel eléctrico se instaló de forma incorrecta, lo cual causó que ésta estuviera desnivelada. No obstante, el Comisionado concluyó que el panel funciona adecuadamente, por lo que se trata de un vicio de terminación o acabado que se puede reparar fácilmente.

La reclamación de la instalación incorrecta de una lámpara en el área del clóset del cuarto principal se descartó porque la deposición tomada al demandante reflejaba que el problema se había corregido.

También se descartó la reclamación del vicio causado por la sustitución de la tubería del sistema de distribución eléctrica de ¾ de pulgadas de diámetro por uno de ½ de pulgada de diámetro. El Comisionado tomó esta determinación porque no se le probó que el cambio de conducto causó las ruinas en la residencia.

Aunque existe controversia en cuanto a sus causas, se determinó que la lámpara del baño del primer nivel de la residencia estaba instalada incorrectamente. Se sugirió que la reparación no debería exceder $250.

El Comisionado concluyó en su informe que la instalación de la lámpara en el pasillo frente al baño del segundo nivel de la residencia no constituye un vicio de construcción, pues el demandante falló en demostrar el nivel en que se afectó funcional o estéticamente la residencia.

Se determinó que el piso de la segunda planta de la residencia estaba nivelado y tenía el espesor especificado en el plano de construcción, a pesar de que la alegación de que el piso de la segunda planta fue construido en cuatro niveles no fue hecha en la demanda enmendada, sino en el informe pericial del ingeniero José A. Muñoz. El Comisionado Especial concluyó que la diferencia en los niveles del piso de la segunda planta se debía a las diferentes terminaciones de las habitaciones de ese nivel.

Tampoco se aceptó en el informe la reclamación de que la lámpara del cuarto dormitorio fue instalada incorrectamente, pues se concluyó que el señor Valdés había relocalizado la lámpara a la altura de su preferencia y los peritos de la parte demandante no trajeron prueba que apoyara el vicio reclamado. De igual forma, se descartó la reclamación de que el piso de la cuarta habitación fue construido debajo del nivel del techo exterior. El Comisionado expresó que la parte demandante no presentó prueba pericial para apoyar esta reclamación. Además, durante la inspección ocular, el Comisionado pudo notar que los vicios alegados ocurrieron como resultado de errores cometidos en la remodelación que ejecutó el señor Valdés en esa habitación.

El Comisionado recibió dos versiones contrarias en cuanto a la reclamación de instalación y alambrado de la lámpara frente al baño del pasillo del segundo nivel. No obstante, según confirmado en su inspección ocular, el Comisionado reconoció que la condición reclamada existe, que se debe compensar y que su reparación no debe exceder $50. La misma medida se adoptó para la reclamación de la instalación de la lámpara del baño del cuarto principal de la residencia.

El señor Valdés reclamó que en el piso del baño del pasillo del segundo nivel se utilizaron las mismas losetas que se usaron en las paredes, las cuales son extremadamente resbaladizas y peligrosas. El Comisionado descartó esta reclamación porque la misma no fue acompañada de análisis técnico y porque éste no se reconoce como un defecto de construcción según el Reglamento del Departamento de Asuntos del Consumidor (D.A.C. O.). También se reclamó que en la entrada de este baño se construyó un escalón peligroso. No obstante, el Comisionado encontró en su inspección ocular que se trataba de una pieza horizontal de 1¼ pulgadas de espesor que define el umbral entre la puerta del baño y el pasillo. El Comisionado describió esta pieza como una que añade belleza, funcionalidad y protección a la propiedad, por lo que descartó esta reclamación. La misma justificación se utilizó para descartar la reclamación para el baño del cuarto principal.

El demandante alegó en la demanda enmendada que la pared interior del baño del pasillo del segundo nivel estaba desplomada, descuadrada y desnivelada. El Comisionado descartó la reclamación y apuntó que los peritos de la parte demandante expresaron que dichos descuadres y desniveles excedían lo permitido por el Reglamento de D.A.C.O., pero no cuantificaron las desviaciones que según dicho reglamento se pueden esperar razonablemente en una construcción. El informe refleja que la inspección ocular del Comisionado confirmó la alegación del perito del demandado, a los efectos de que se trataba de una "barriga" o defecto que no representaba el nivel de afectación que amerite la catalogación de defecto de construcción. El Comisionado también apuntó que de ser éste un defecto de construcción, debía ser notificado al desarrollador dentro de seis meses de haberse firmado la escritura de compraventa. Los mismos fundamentos se usaron para descartar la misma reclamación hecha en cuanto al baño del cuarto principal, aunque ésta no fue una alegación específica hecha en la demanda enmendada.

Se reclamó que la pared interior del baño del cuarto principal tenía una "barriga" y estaba descuadrada, lo cual causó que el señor Valdés tuviera que instalar un nuevo gabinete de baño. Sin embargo, el informe del perito de la parte demandada y la inspección ocular del Comisionado confirmaron que el nuevo gabinete quedó bien instalado y sin ningún ajuste notable. Por lo tanto, se descartó esta reclamación.

Aunque no fue incluida en las alegaciones de la demanda enmendada, el Comisionado discute y descarta la reclamación de la diferencia de 3 pulgadas entre el piso del cuarto principal de la residencia y su baño. El Comisionado confirmó que la diferencia en altura existe, pero que esto es común en residencias donde se instalan facilidades sanitarias en losas estructurales, debido a que se tiene que añadir un poco de relleno. Sin embargo, esto no afecta el paso de una habitación a otra y no representa un obstáculo o riesgo a la seguridad.

En cuanto a la reclamación referente al descuadre en la puerta de un gabinete del componente, el Comisionado apunta que las mismas, si existen, son imperceptibles a simple vista. Además, el Comisionado expresa que si el desnivel superaba la tolerancia permitida conforme al Reglamento de D.A.C.O., el señor Valdés debía notificar al desarrollador dentro de los treinta días de haberse firmado la escritura de compraventa. El señor Valdés no presentó evidencia de la magnitud del desnivel y el Comisionado no lo pudo percibir en la inspección ocular, por lo que se descartó esta reclamación.

La reclamación de descuadre y "barriga" en la pared divisoria entre el comedor y la cocina fue descartada por el Comisionado. Lo percibido por el Comisionado en la inspección ocular y las declaraciones del señor Valdés durante la deposición que le fue tomada, donde admitió que no se percató de la "barriga" hasta que se remodeló la casa, llevó al Comisionado a concluir que el defecto fue producto de las remodelaciones, por lo que descartó la reclamación.

Ninguno de los peritos de la parte demandante discutió en sus informes el problema del alegado goteo de agua en la pared divisoria de la sala y la cocina cuando llovía. Sin embargo, el perito de Levitt expuso en su informe que no percibió el problema y el Comisionado tampoco notó el problema en su inspección ocular, por lo que se descartó esta reclamación.

El señor Valdés presentó dos reclamaciones referentes a las escaleras de la residencia, a saber: que los escalones se construyeron de forma peligrosa, con diferencias de hasta una pulgada; y que las paredes se construyeron con descuadres y "barrigas". El Comisionado indica en su informe que a pesar de que había una diferencia en la elevación del descanso de la escalera, las alturas de las contrahuellas en un mismo tramo no excedían ¼ de pulgada. Por lo tanto, los defectos alegados no convertían la escalera en una no funcional ni peligrosa, como para justificar su demolición y reconstrucción. Como las "barrigas" o descuadres en las paredes no figuran como vicios ocultos, el Comisionado apuntó que compete a la parte demandante probar que se excedieron las tolerancias que permite el Reglamento de D.A.C.O., dentro del término dispuesto para ello en dicho reglamento.

El Comisionado confirmó que, de acuerdo a las reclamaciones del señor Valdés, los tubos PVC conectados a los extractores eran de 2 ½ pulgadas, en vez de 3 pulgadas, como se especificaba en los planos de construcción. Sin embargo, ninguno de los peritos evaluó si los extractores tenían la capacidad para trabajar adecuadamente con los tubos de 2 ½ de diámetro. Por lo tanto, el Comisionado sugirió que los peritos de las partes evalúen las especificaciones técnicas de los extractores usados y el volumen espacial de los baños para determinar si los tubos instalados tienen la capacidad de transferencia de aire en cada baño.

A falta de alegaciones en contrario por parte de los peritos del demandante, el Comisionado determinó que la localización del extractor en los baños no representaba una violación al Código Eléctrico Nacional, por lo que descartó la alegada peligrosidad de la ubicación. Sin embargo, reconoció que la localización de los extractores no resulta la mejor desde el punto de vista estético, por lo que recomendó que éstos se elevaran.

El Informe refleja que el Comisionado descartó la alegación de que el desnivel incorrecto en el techo causaba la acumulación de agua. Aunque dos de los desagües estaban a distancias distintas de sus esquinas, se encontró que funcionaban adecuadamente y que las acumulaciones de agua podían evaporarse en corto tiempo. Además, el Comisionado no encontró manchas en los plafones que excedieran los por cientos tolerables.

En su inspección ocular, el Comisionado no pudo identificar las grietas en las paredes que alegó la parte demandante, ya que las paredes estaban cubiertas con decoraciones. El único perito que informó sobre las alegadas grietas fue el perito de la parte demandada, quien expuso que las grietas que pudo percibir estaban dentro de las tolerancias que establece el Reglamento de D.A.C.O. Por lo tanto, se descartó esta reclamación.

El Comisionado determinó que $350 bastarían para cubrir los costos de revisión y de trabajos eléctricos que fueran necesarios en relación a las lámparas de los baños, las conexiones de los extractores de los baños y el ajuste de la tapa del panel de distribución eléctrica. Por otro lado, recomendó $250 para la reparación de los enchapes de los baños que pudieran afectarse por los trabajos de reubicación de los extractores y para el rellenado de daños, separaciones o deficiencias causadas en los bordes de las bañeras u otras deficiencias de fácil reparación reconocidas por el perito de la parte demandada.

El Comisionado expuso en las conclusiones de su informe que muchas de las reclamaciones hechas por el señor Valdés fueron producto de criterios personales subjetivos que pudieron haber sido atendidos por D.A.C.O. Además, muchas de las reclamaciones se basaron en la postura de que las construcciones se tienen que llevar a cabo en completa concordancia con los planos de construcción aprobados y la insistencia de que estas deficiencias constituyen violaciones contractuales, sin probar que afectan la seguridad pública, funcionalidad o uso para el cual está destinada la propiedad. Según el Comisionado, esta postura no reconoce las tolerancias y términos de caducidad que ofrece el Reglamento de D.A.C.O. para muchos de los defectos alegados.

La evaluación del informe del Comisionado Especial refleja que los peritos del demandante se circunscribieron a describir los problemas que encontraron en la propiedad en sus informes periciales, o sugerir que se incurrió en violaciones al Reglamento de D.A.C.O. en su construcción, pero no justificaron las reclamaciones del señor Valdés con conclusiones periciales o señalamientos específicos de cómo se incurrió en las violaciones a dicho reglamento. Por otro lado, muchas de las observaciones y conclusiones del perito del demandado fueron lo suficientemente detalladas y pudieron ser corroboradas por el Comisionado Especial en su inspección ocular.

El Comisionado Especial designado por acuerdo entre las partes emitió un informe detallado y completo que incluyó sus observaciones y recomendaciones. Evaluó todas las reclamaciones entabladas por el señor Valdés y esgrimió la justificación técnica o jurídica que apoya sus recomendaciones y conclusiones. Ninguna de las determinaciones de hechos contenidas en el informe aparenta ser errónea. El Tribunal de Primera Instancia acogió el Informe y al así actuar actuó correctamente.

La prueba que obra en el expediente del caso de autos apoya las determinaciones y las conclusiones que el Comisionado Especial incluyó en su informe. El señor Valdés no ha demostrado que el Comisionado Especial haya errado en su apreciación o haya actuado con prejuicio, pasión o parcialidad. El Juez de Instancia aceptó el Informe del Comisionado y dictó sentencia conforme a sus términos. Por lo tanto, no se ha presentado ninguna circunstancia que amerite que descartemos el criterio de deferencia a las determinaciones del Comisionado Especial y del Tribunal de Primera Instancia.

## IV

Por todo lo antes expuesto, se confirma la sentencia del Tribunal de Primera Instancia.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria.

Lcda. Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones