

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| María de los Ángeles Martínez Marrero, et al.<br><br>    Demandante<br><br>        v.<br><br>Efraín González Droz, et al.<br><br>    Demandados<br><br>United States District Court for the District of Puerto Rico<br><br>    Peticionario | <br><br><br><br>2011 TSPR 3<br><br>180 DPR \_\_\_\_ |

Número del Caso: CT-2009-2

Fecha: 11 de enero de 2011

Materia: Certificación procedente de la Corte de Distrito para el Distrito de Puerto Rico

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

María de los Ángeles
Martínez Marrero, *et al*.

    Demandantes

        v.

                              CT-2009-2    Certificación
Efraín González Droz, *et al*.
    Demandados

United States District Court
for the District of Puerto Rico
    Peticionario


                    PER CURIAM


        San Juan, Puerto Rico, a 11 de enero de 2011.

        La presente controversia, cuya certificación nos solicitó la Corte de Distrito de Estados Unidos para el Distrito de Puerto Rico, nos permite resolver si es válido en nuestra jurisdicción un acuerdo de arbitraje vinculante entre un doctor y su paciente previo a una operación quirúrgica. Debemos evaluar si, en el marco de la relación médico-paciente, las partes pueden acordar de antemano renunciar al foro judicial y optar por el arbitraje para dirimir reclamaciones de impericia médica.

        Expedimos la certificación solicitada por el foro federal y resolvemos que un acuerdo de arbitraje de esta índole es inválido en Puerto Rico

por no satisfacer las exigencias de la Ley de Arbitraje Comercial, Ley Núm. 376 de 8 de mayo de 1951, 32 L.P.R.A. sec. 3201, por atentar contra el orden público que sirve de freno a la libertad contractual y porque propone resolver un reclamo de impericia médica por la vía contractual cuando estos casos se atienden a la luz del derecho de responsabilidad extracontractual. Asimismo, la decisión de invalidar el pacto también se fundamenta en nuestra reiterada norma de que los tribunales son los foros que dispone la ley para dirimir los casos de impericia médica y, como tales, no pueden ser relegados a favor de otras alternativas. Veamos.

I.

La Sra. María de los Ángeles Martínez Marrero, el Sr. Carlos Rubén Rosa y la sociedad de gananciales compuesta por ambos demandaron al Dr. Efraín González Droz, un ginecólogo-obstetra que efectuaba procedimientos de cirugía plástica y que, a causa de ello, perdió su licencia para practicar la medicina en Puerto Rico.

En la demanda, presentada ante el Tribunal de Distrito de Estados Unidos para el Distrito de Puerto Rico por diversidad de ciudadanía,[1] la señora Martínez Marrero alegó que el doctor González Droz le realizó una cirugía de aumento de busto y una abdominoplastia de manera negligente. Según ésta, ello provocó que su cuerpo quedara mutilado y con varias cicatrices permanentes. La demanda por impericia

---

[1] El doctor González Droz es residente de California, mientras que la señora Martínez Marrero reside en Puerto Rico.

médica se basó en el Art. 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141, que dispone que todo aquel que por acción u omisión cause daño a otro, mediante su culpa o negligencia, tendrá la obligación de reparar el perjuicio causado.

La señora Martínez Marrero alegó además que tuvo que recurrir al Dr. Carlos M. Portocarrero por unas molestias que sentía en el área operada por el doctor González Droz. Tras una evaluación, se le extrajo un tejido interno pútrido que le habían dejado en la primera intervención. El doctor Portocarrero también arregló la asimetría en el busto de la demandante, que había sido resultado de la cirugía anterior. En esta segunda intervención, se descubrió que la demandante no tenía indicios de haberse realizado una abdominoplastia, pues las suturas no correspondían con las incisiones que deben hacerse en este tipo de procedimiento.

Oportunamente, el doctor González Droz presentó una moción para que se desestimara la demanda. Adujo que, como parte de los documentos relacionados con la doctrina de consentimiento informado, su paciente había firmado un pacto de arbitraje vinculante. El acuerdo firmado por el doctor González Droz y la señora Martínez Marrero reza de la siguiente forma:

> En la eventualidad de que ocurra un resultado adverso que a mi juicio yo entienda que surgió como consecuencia de esta cirugía y decida reclamar responsabilidad al Dr. Efraín González Droz, por los hechos, me comprometo y acepto libre y voluntariamente a que la controversia o reclamación sea decidida por un Panel de Arbitraje, y no por una Corte Judicial Estatal ó [sic] Federal.

>Este Panel se regirá conforme a las leyes de arbitraje de Puerto Rico, y estará constituido por cinco miembros médicos y abogados seleccionados por las partes envueltas en la controversia. Estos miembros han de tener como requisito amplio conocimiento y experiencia en la materia, además de estar activos en su práctica profesional.

De conformidad con lo anterior, y según señala el doctor González Droz, la señora Martínez Marrero renunció a presentar ante el foro estatal o federal cualquier reclamación futura que surgiera como consecuencia de la cirugía a la que se habría de someter. En cambio, tales controversias futuras se adjudicarían por un panel de cinco árbitros que en su momento la señora Martínez Marrero seleccionaría junto al doctor González Droz. El panel tendría que estar compuesto tanto por médicos como por abogados expertos en la materia y activos en la práctica.

La señora Martínez Marrero se opuso a la desestimación de la demanda solicitada por el doctor González Droz por entender que su consentimiento al pacto estuvo viciado y que su firma había sido falsificada. Además, adujo que en Puerto Rico no está permitido someter controversias sobre impericia médica a un proceso de arbitraje vinculante. A su entender, ello sería contrario al orden público.

Tras realizarse un descubrimiento de prueba, el foro federal resolvió la controversia sobre la legitimidad de las firmas y concluyó que eran genuinas. No obstante, debido a sus dudas sobre la validez de este tipo de pacto y ante las ramificaciones del caso para la práctica médica en la Isla, el 24 de abril de 2009 nos solicitó que certificáramos las

siguientes preguntas: (1) ¿Es válido en Puerto Rico un acuerdo de arbitraje vinculante entre un doctor y su paciente? (2) De asumir que un acuerdo de tal naturaleza es válido, ¿qué límites, si alguno, tendría?

Según hemos indicado anteriormente, "en términos generales, el procedimiento de certificación interjurisdiccional es el instrumento procesal adecuado que permite a un tribunal someter, para una contestación definitiva, a otro tribunal de jurisdicción distinta, preguntas sobre cuestiones dudosas que se refieren al derecho de esa jurisdicción". Guzmán v. Calderón, 164 D.P.R. 220, 227 (2005). De igual forma, "las contestaciones a esas preguntas obligan en cualquier procedimiento judicial ulterior entre las mismas, bajo la doctrina de cosa juzgada". *Íd.* Además, mediante la certificación interjurisdiccional se preserva y respeta, verdaderamente, "la función prístina de las cortes estatales de interpretar y formular el derecho de [sus respectivos] estados", contribuyendo a que se alivien en buena parte las tensiones inherentes al sistema federalista. Pan Ame. Comp. Corp. v. Data Gen. Corp., 112 D.P.R. 780, 783 (1982). Dicho procedimiento ha dado lugar "a una útil colaboración entre las dos jurisdicciones, la federal y la estatal". Medina & Medina v. Country Pride Foods, 122 D.P.R. 172 (1988). Así, se ha reconocido la primacía de las normas de derecho civil en la resolución de conflictos de derecho privado. *Íd.*

Para determinar si acogemos un recurso de certificación expedido por el Tribunal de Distrito de Estados Unidos para

el Distrito de Puerto Rico, corresponde evaluar los requerimientos de una certificación interjurisdiccional. La Ley de la Judicatura de 2003, Ley Núm. 201 de 22 de agosto de 2003, 4 L.P.R.A. sec. 24., dispone en su Art. 3.002 (f) que este Tribunal podrá atender cualquier asunto que le certifique el Tribunal Supremo de Estados Unidos, un tribunal apelativo federal, un tribunal de distrito federal o las cortes revisoras de máxima jerarquía en los estados. La certificación interjurisdiccional surge cuando alguno de los tribunales anteriormente citados enfrenta una controversia judicial en la que están envueltas "cuestiones de derecho puertorriqueño que pueden determinar el resultado del mismo y respecto al cual, en la opinión del tribunal solicitante, no existan precedentes claros en la jurisprudencia de este Tribunal". Art. 3.002(f) de la Ley de la Judicatura de 2003, *supra*.

Tras evaluar los hechos del caso, decidimos expedir la certificación que nos solicitó el foro federal porque los asuntos planteados versan sobre cuestiones de derecho puertorriqueño que no son atendidos de forma particular por jurisprudencia previa de este Tribunal. Asimismo, decidimos expedir porque entendemos que, al atender estas controversias, se determinará el resultado del caso ante el foro federal. Luego de expedir la certificación solicitada y tras analizar todos los planteamientos, estamos en posición de resolver y procedemos a así hacerlo.

II.

A.

Como cuestión inicial corresponde examinar si la Ley de Arbitraje Comercial, *supra*, que regula de forma especial los pactos de este género en Puerto Rico, permite el tipo de clausula contractual en controversia. El alcance de dicho estatuto está expresamente establecido en su Artículo 1, que dispone:

> Dos o más partes podrán convenir por escrito en someter a arbitraje […] **cualquier controversia que pudiera ser objeto de una acción existente entre ellos a la fecha del convenio de someter a arbitraje**; o podrán incluir en un convenio por escrito una disposición para el arreglo mediante arbitraje de **cualquier controversia que en el futuro surgiere entre ellos de dicho acuerdo o en relación con el mismo**. Tal convenio será válido, exigible e irrevocable salvo por los fundamentos que existieran en derecho para la revocación de cualquier convenio. (Énfasis suplido).

Para sostener la validez de un pacto de arbitraje, no es suficiente que dos partes la hayan acordado libremente. Se requiere, además del pacto válido, que se satisfagan las exigencias dispuestas en la Ley de Arbitraje Comercial, *supra*. El referido estatuto sólo permite el arbitraje en dos supuestos: (1) cuando ya hay una controversia existente (una herencia pendiente o un accidente automovilístico que ya sucedió, por ejemplo) y (2) cuando se quieren atender controversias futuras que surjan del propio acuerdo o estén relacionadas con éste. Esta segunda modalidad es una cláusula accesoria a un contrato principal que es muy común en el contexto comercial. Véase PaineWebber, Inc. v. Soc. de Gananciales, 151 D.P.R. 307 (2000); Rivera v. Samaritano &

Co., Inc., 108 D.P.R. 604 (1979); McGregor-Doniger v. Tribunal Superior, 98 D.P.R. 864 (1970).

En el caso ante nos, el pacto de arbitraje entre médico y paciente se suscribió previo a la operación quirúrgica y sin que estuviese trabada controversia alguna.[2] Así, no se satisfizo la primera modalidad de la Ley de Arbitraje Comercial, *supra*, que requiere que el pacto se haga una vez establecida una controversia. Distinto hubiese sido el caso si, una vez consumado el daño por la negligencia médica, tanto el médico como la paciente – ya trabada la controversia – decidieran someterse voluntariamente al arbitraje. En ese supuesto, que no está presente en el caso de autos, se cumplirían los preceptos de la primera modalidad de la Ley de

---

[2]La Procuradora del Paciente promulgó el Reglamento Núm. 7617 del 21 de noviembre de 2008, cuyo propósito es administrar la Carta de Derechos y Responsabilidades del Paciente. En dicho reglamento, se prohíbe específicamente que "un proveedor solicite a un paciente o haga formar parte del consentimiento informado a ser firmado por el paciente lo siguiente: aspectos sobre cualquier decisión relacionada con la posibilidad de algún acto de negligencia de un proveedor, en cuyo caso dicha decisión puede ser errónea ante un momento de vulnerabilidad del paciente, dada la condición de salud del paciente y la dependencia con la institución o proveedor en dicho momento en particular". Art. 13, Secc. 8(c)(1), *supra*. Aunque de primera intención podría aparentar que este reglamento es dispositivo de la controversia, no lo es. Los hechos del presente caso sucedieron en 2006, mientras que el reglamento entró en vigor en 2008. Por tanto, el reglamento aludido no gobierna el caso ante nos, por no tener carácter retroactivo. Ahora bien, como correctamente señala el Primer Circuito de Apelaciones del foro federal al analizar una versión previa del reglamento en Rivera v. Centro Médico de Turabo, Inc., 575 F.3d 10 (1er Cir 2009), "el reglamento es evidencia persuasiva de la política pública que existe en Puerto Rico en la actualidad" a favor de prohibir que se incluya en los documentos de consentimiento informado asuntos relacionados a la posible negligencia del proveedor médico.

Arbitraje Comercial, *supra,* y el arbitraje sería válido para resolver la controversia.

Tampoco se satisfacen las exigencias de la segunda modalidad de la Ley de Arbitraje Comercial, *supra*, pues el arbitraje acordado no se fundamentó en discrepancias futuras que pudieran surgir del mismo pacto. El acuerdo firmado por el doctor González Droz y la señora Martínez Marrero nada disponía sobre desavenencias producto del mismo pacto. Guardaba total silencio sobre ese aspecto. Versaba, en cambio, sobre la pretendida renuncia de la señora Martínez Marrero a remedios judiciales en casos de impericia médica producto de la intervención quirúrgica. La segunda modalidad de la Ley de Arbitraje Comercial, *supra*, es en realidad una cláusula accesoria a un contrato principal que es muy común en el contexto comercial pero que no está presente en este acuerdo. El pacto de arbitraje entre las partes, pues, no cumplió con ninguna de las dos modalidades que provee la Ley de Arbitraje Comercial, *supra*.

Nada de lo aquí dicho resta fortaleza a la vigorosa política pública que existe en Puerto Rico a favor del arbitraje como método de resolución de conflictos. U.C.P.R. v. Triangle Engineering Corp., 136 D.P.R. 133 (1994). No obstante, en ausencia de legislación que regule el arbitraje pactado por las partes en casos de impericia médica, es indudable que la cláusula en este caso no está cobijada por la Ley de Arbitraje Comercial, *supra*. Examinemos, sin embargo, si la misma es válida bajo el palio del Código Civil.

B.

Un examen de la normativa vigente nos convence que el pacto de arbitraje tampoco satisface los requisitos de un contrato válido en Puerto Rico debido a que viola el orden público. El Art. 1207 del Código Civil de Puerto Rico, 31 L.P.R.A. 3372, dispone que "los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público". Hemos dicho antes que la libertad de contratación privada que gobierna nuestro ordenamiento jurídico no es irrestricta, pues la ley, la moral y el orden público son sus frenos. Luan Invest. Corp. V. Rexach Const. Co, 152 D.P.R. 652 (2000). La doctrina ha intentado definir y darle forma al impreciso e inexacto concepto de orden público, estableciendo que es una serie de normas e ideales en la sociedad que no siempre alcanzan una formulación estatutaria y que, más aún, trascienden esa codificación. "El orden público no se agota en una formulación legal, a lo que opondría su carácter dinámico". J.A. Doral, La noción de orden público en el Derecho civil español, Ed. Universidad de Navarra, Pamplona, 1967, pág. 15. "El orden público abarca indeterminadamente el hueco dejado por la ley en lo no preceptuado o prohibido de modo taxativo por ella pero que perjudicaría, de tolerarse, al interés general. Por eso figura como un límite, una excepción: todo lo que no está prohibido por la ley ni es contrario a la moral y al orden público, está permitido". Íd, pág. 18.

Asimismo, cuando se trata de derechos fundamentales, de alta jerarquía en la sociedad y en el bienestar general, el orden público como freno a la libertad contractual cobra aún mayor vigor. "El orden público rebasa su concreción como orden en el Estado; es decir, es algo más que la organización necesaria para el buen funcionamiento del Estado. Esto explica la invocación que hace la doctrina al orden público en los llamados derechos irrenunciables por estar unidos a la personalidad, adscritos al cumplimiento de deberes inherentes a los derechos o facultades substraídos, por razones superiores, al poder de disposición del individuo. En tales casos, el orden público no actúa indefectiblemente de manera defensiva sino a modo de un resorte del bien común, que incluye tanto el bien de la persona como el de la colectividad". *Íd.*, págs. 40-41.

En el presente caso, sin duda hubo un pacto celebrado entre dos partes contratantes que tienen capacidad para obligarse. No obstante, dicho acuerdo es violatorio del orden público por privarle a la paciente de buscar un recurso judicial en caso de padecer un daño a raíz de la negligencia médica. La integridad de los pacientes que acuden a un médico para obtener un servicio que les permita recuperar o mejorar la salud está por encima de la libertad contractual que permea nuestro ordenamiento y del favoritismo por el arbitraje como política pública. Los médicos proveen servicios cuyo objeto principal es el cuerpo humano. Como tal, los casos de impericia médica casi siempre buscan reparar un daño sufrido sobre el cuerpo o sobre la salud en

general del ser humano. Oliveros v. Abreu, 101 D.P.R. 209 (1973). Nuestra jurisprudencia ha resaltado lo fundamental que resulta el derecho a la inviolabilidad del cuerpo. Santiago Otero v. Méndez, 135 D.P.R. 540 (1994). Ese derecho está protegido, en términos concretos, por el consentimiento informado que tiene que expresar todo paciente al decidir si se interviene con su cuerpo y de qué manera. Recientemente, este Tribunal reconoció una vez más "el derecho de todo paciente a participar plenamente de las decisiones relacionadas con su salud y cuidado médico". Lozada Tirado v. Testigos de Jehová, Res. el 27 de junio de 2010, 2010 T.S.P.R 9, 177 D.P.R ____ (2010). Véase también Arrieta Pla v. Barreto Domínguez, 137 D.P.R. 735 (1994); Rodríguez Crespo v. Hernández, 121 D.P.R. 639 (1988). Sobre este asunto, el profesor Mosset Iturraspe señala:

> [E]n la medicina, más allá de la repercusión económica de la muerte, la enfermedad o incapacidad, se hallan en juego bienes que se sitúan fuera del comercio, inalienables e imprescriptibles; calificados como derechos de la personalidad; **su salvaguarda o protección compromete el orden público social.** (Énfasis suplido). Mosset Iturraspe, Responsabilidad civil del médico, Ed. Astrea, 1985, pág. 21-22.

En ausencia de legislación que delimite y regule el alcance de la aplicabilidad del arbitraje pactado por las partes en la relación médico-paciente, existe un peligro real – no meramente teórico – de que acuerdos de este tipo, sin parámetro alguno, rijan la relación entre el médico y el paciente en casos de impericia médica. Al certificar el presente recurso, el Tribunal de Distrito Federal nos alertó

sobre varios casos del Tribunal de Apelaciones de Puerto Rico en que se han devuelto a los foros de instancia controversias sobre vicios del consentimiento en otros "acuerdos de arbitraje" suscritos por el propio doctor González Droz. Surge de esos casos que por lo menos tres pacientes del doctor González Droz cuestionaron la validez de tales acuerdos de arbitraje por vicios del consentimiento, ya que no fueron informadas adecuadamente sobre los efectos del procedimiento arbitral. Véase Lugo Lugo v. González Droz, KLAN-2008-00605; Rivera Lugo v. González Droz, KLAN-2007-00730; Terreforte Lugo v. González Droz, Núm. KLAN-2006-001325. Sin duda resulta sumamente preocupante – y atenta contra el orden público – que una persona que practicó la cirugía plástica sin una licencia para ello, pueda evadir su responsabilidad por los actos negligentes en que haya incurrido a través de pactos de arbitraje como el que está en controversia en este caso.

Por lo tanto, estamos plenamente convencidos de que el concepto del orden público, como acopio y reflejo de los principios generales de Derecho, recoge el prominente valor jurídico de protección a la salud e integridad física de un paciente médico, incluyendo su derecho al consentimiento informado sobre lo que vaya o no a hacerse sobre su cuerpo. La función imprescindible que proveen los médicos en nuestra sociedad, y la confianza depositada por los pacientes en ellos, es lo que este Tribunal debe proteger bajo el palio del concepto orden público. Bajo el ordenamiento actual, no podemos aceptar el argumento de que la paciente consintió a

una cláusula que no está permitida por la legislación que regula el arbitraje en Puerto Rico.

### III.

Ahora bien, independientemente de la existencia de un contrato entre las partes en un caso como éste, por décadas este Tribunal ha resuelto que las acciones de daños por impericia profesional son de índole extracontractual y, por ende, deben ser atendidos al amparo del Art. 1802 del Código Civil, *supra*. De conformidad con lo anterior, en esta jurisdicción los médicos, los abogados y los notarios responden por su negligencia profesional bajo el Art. 1802 del Código Civil, *supra*. Véase Colón Prieto v. Géigel, 115 D.P.R. 232 (1984) y Chévere v. Cátala Rodríguez, 115 D.P.R. 432 (1984).

Sobre este particular, en Ramos v. Orientalist Rattan Furniture, 130 D.P.R. 712, 727-28 (1992), explicamos cómo lidiar con una acción de daños en la que se puede reclamar por la vía contractual o extracontractual. Se trata de la llamada concurrencia de acciones. Resolvimos que:

> [Ú]nicamente procede la acción en daños contractuales […] **cuando el daño sufrido exclusivamente surge como consecuencia del incumplimiento de una obligación específicamente pactada, daño que no ocurriría sin la existencia del contrato.** Ahora bien, […] resulta procedente una reclamación de daños extracontractuales como resultado del quebrantamiento de un contrato, si el hecho causante del daño constituye una violación del deber general de no causar daño a otro y, a la vez, incumplimiento contractual. (Énfasis suplido y escolio omitido). *Íd*. pág. 727.

En vista de que los daños sufridos a causa de un acto de impericia profesional no tienen que surgir de una obligación

pactada previamente entre las partes, expresamos que tales acciones se rigen por el Art. 1802 del Código Civil, *supra*. **Ello independientemente de que esté envuelto un contrato**. Ramos v. Orientalist Rattan Furnt., Inc., *supra*, pág. 728 n.10; véase J. Ataz López, Los médicos y la responsabilidad civil, Ed. Montecorvo, Madrid.

Por otra parte, en el contexto de los pactos en la relación médico paciente, el Art. 1802, *supra*, cobra aun mayor fuerza como vehículo procesal porque los documentos firmados podrían interpretarse como parte del proceso de consentimiento informado, y no como un contrato.

La señora Martínez Marrero firmó los acuerdos de arbitraje en controversia como parte del proceso previo a la cirugía, llevado a cabo conforme a la doctrina de consentimiento informado. De hecho, la señora Martínez Marrero ha alegado en este caso que uno de los "acuerdos de arbitraje" fue suscrito durante el día de la operación, cuando estaba bajo el efecto de sedantes. La firma de estos documentos no debe estar enmarcada en el derecho de contratos, sino en el deber jurídico de todo profesional médico de no causarle daños a sus pacientes, so pena de incurrir en responsabilidad civil extracontractual.

Al respecto, en Sepúlveda de Arrieta v. Barreto, 137 D.P.R. 735 (1994), expresamos que el derecho de todo paciente a la autodeterminación y a decidir libremente qué hacer con su cuerpo está protegido por los tribunales. Por ello, antes de intervenir con el cuerpo de cualquier paciente se requiere obtener su autorización. Ese consentimiento, sin embargo,

tiene que ser informado o ilustrado. Es decir, se le impone al médico la obligación de ofrecerle a su paciente todos aquellos datos que sean necesarios para que éste comprenda la naturaleza del tratamiento, sus riesgos y complicaciones y los beneficios que se esperan de éste. Véase, además, <u>Ríos Ruiz v. Mark</u>, 119 D.P.R. 816 (1987).

La doctrina del consentimiento informado no es, pues, de origen contractual. De hecho, diversos tratadistas han rechazado que este principio se reduzca a la mera firma de formularios, como ocurrió en este caso. Se ha denominado tal visión como incorrecta, engañosa y hasta peligrosa. Véase, e.g., F. A. Rozovsky, <u>Consent to Treatment</u>, 2da ed., Little, Brown and Co., Boston, 1990, pág. 3.

En el presente caso, la señora Martínez Marrero firmó una serie de documentos previos a la operación que no fueron en realidad producto de una negociación contractual sino más bien parte del proceso de consentimiento informado que, como norma general, debe prestar todo paciente a su médico antes de ser intervenido. Entre esos documentos firmados figura el llamado pacto de arbitraje. En otras palabras, al igual que sucede con la responsabilidad civil del médico, la doctrina del consentimiento informado tiene su origen en principios extracontractuales. Esto es, simplemente, función del deber jurídico que emana de la relación médico-paciente, ya sea que ésta se base en un contrato o no. **En consecuencia, el consentimiento prestado por Martínez Marrero al pacto de arbitraje en controversia podría estar viciado, pues no fue propiamente el producto de una negociación contractual.**

Por último, este Tribunal ha refrendado la intervención **original** de la Rama Judicial en asuntos de impericia médica. En Vélez Ruiz v. ELA, 111 D.P.R. 752 (1981), invalidamos los paneles de arbitraje compulsorios establecidos en el Código de Seguros, y que formarían parte del Tribunal de Primera Instancia, porque éstos intervenían con funciones judiciales esenciales. Allí defendimos la intervención judicial original en pleitos de impericia médica como un asunto de entronque constitucional.[3]

Así las cosas, desde 1986 se estableció un proceso particularizado para atender casos de impericia médica. En particular, el Art. 41.080 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 4108, exige que toda acción civil que surja de una reclamación de daños por impericia médico-hospitalaria **se iniciará mediante la presentación de una demanda en el tribunal competente**. Es a partir de ello que el juez, en el ejercicio de su discreción, puede asignar el caso a un panel de arbitraje que tendrá las funciones de un Comisionado Especial. Es evidente que la Legislatura ha diseñado un proceso específico para atender las acciones de daños por impericia médica. En este proceso establecido legislativamente, el arbitraje permanece como opción, pero

---

[3]Pocos años antes de nuestra decisión en Vélez Ruiz v. ELA, *supra*, el Tribunal Supremo de Illinois tomó el mismo curso de acción al declarar inconstitucional la ley que creaba un arbitraje compulsorio mediante un panel a base de que ello constituía un ejercicio indebido de la función judicial por personas extrañas a la judicatura. Wright v. Central Du Page Hospital Association, 347 N.E. 2d 736 (1976).

única y exclusivamente luego de presentada la demanda ante el tribunal y siempre y cuando sea solicitada por el juez.

IV.

Para concluir, contestamos las preguntas que nos presenta el foro federal de la siguiente forma: un pacto de arbitraje como el que nos ocupa es inválido en esta jurisdicción porque (1) no satisface ninguna de las modalidades discutidas de la Ley de Arbitraje Comercial, *supra*; (2) atenta contra el orden público; (3) nuestra jurisprudencia interpretativa sobre impericia médica ha resuelto consecuentemente que los daños producto de la negligencia médica se atenderán bajo el Art. 1802, *supra*, independientemente de si medió un contrato o no en la relación médico-paciente; y (4) a tenor con el ordenamiento dispuesto por la Asamblea Legislativa, las controversias de impericia médica en Puerto Rico se inician a través de la presentación de una demanda en los tribunales y solamente a partir de ese momento, a discreción del juez, puede entonces convocarse al arbitraje.

Por haber contestado categóricamente la primera interrogante planteada por el foro federal, es innecesario entrar a considerar la segunda cuestión sobre la extensión de la validez de este tipo de pactos. Contestada la pregunta de la Corte de Distrito de Estados Unidos para el Distrito de Puerto Rico, se devuelve el caso a dicho foro.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

María de los Ángeles
Martínez Marrero, *et al.*

    Demandantes

       v.

                                          CT-2009-2

Certificación
Efraín González Droz, *et al.*
    Demandados

United States District Court
for the District of Puerto Rico
    Peticionario


SENTENCIA


San Juan, Puerto Rico, a 11 de enero de 2011.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, se devuelve el caso a la Corte de Distrito de Estados Unidos para el Distrito de Puerto Rico.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Martínez Torres concurre con opinión escrita a la cual se une el Juez Asociado señor Rivera García. La Juez Asociada señora Rodríguez Rodríguez disiente sin opinión escrita.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| María de los Ángeles Martínez Marrero, *et al.* Demandantes | | |
| v. | CT-2009-2 | Certificación |
| Efraín González Droz, *et al.* Demandados | | |
| United States District Court for the District of Puerto Rico Peticionario | | |

Opinión concurrente emitida por el Juez Asociado señor MARTÍNEZ TORRES a la cual se une el Juez Asociado señor RIVERA GARCÍA.

En San Juan, Puerto Rico, a 11 de enero de 2011.

Estoy de acuerdo con la conclusión a la que llega el Tribunal en este caso. Sin embargo, me veo precisado a emitir una opinión concurrente porque estoy convencido de que se puede llegar al mismo resultado por medio de un análisis integrado de la legislación vigente y una aplicación distinta de la misma. Hay expresiones del Tribunal que considero que no hacen falta para resolver este caso y que pueden crear confusión en áreas del derecho que estaban claras hasta ahora.

A pesar de que la Ley de Arbitraje, Ley Núm. 376 de 8 de mayo de 1951, 32 L.P.R.A. 3201 y ss., estableció un lenguaje amplio a favor del arbitraje, la enmienda al Código de Seguros aprobada mediante la Ley Núm. 6 de 30 de diciembre de 1986, supra, 26 L.P.R.A. 4108, creó una excepción específica para los casos de impericia médica.

I

La señora María de los Ángeles Martínez Marrero acudió al doctor Efraín González Droz para que le realizara una cirugía de aumento de busto y una abdominoplastía. Inconforme con el resultado, que se alega mutiló el cuerpo de la paciente Martínez Marrero, el señor Carlos Rubén Rosa y la sociedad legal de bienes gananciales que ambos componen demandaron al ginecólogo obstetra, quien perdió su licencia para ejercer la medicina en Puerto Rico por practicar cirugías plásticas sin autorización para ello.

La demanda se presentó ante el Tribunal de Estados Unidos para el Distrito de Puerto Rico, que acogió el caso por diversidad de ciudadanía, toda vez que el doctor González Droz actualmente reside en California. Le imputaron negligencia bajo el Art. 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141.

El galeno solicitó la desestimación de la demanda porque la señora Martínez Marrero firmó un acuerdo de arbitraje antes de operarse. En el documento, renunciaba a la posibilidad de presentar una demanda por daños ante el tribunal estatal o federal. Así, aceptó que un panel de cinco árbitros dilucidara cualquier reclamación posterior, relacionada a resultados adversos que pudiera tener la cirugía.

A pesar de la alegación de la demandante de que se falsificó su firma en el acuerdo, el tribunal federal concluyó que ésta era genuina. Sin embargo, el tribunal

federal nos solicita mediante recurso de certificación interjurisdiccional que resolvamos: (1) si es válido en Puerto Rico un acuerdo de arbitraje vinculante entre doctor y paciente y; (2) si el acuerdo es válido, cuáles son sus límites. Luego de analizar la solicitud del tribunal federal, decidimos expedir la certificación solicitada.

II

La Ley de Arbitraje Comercial, supra, viabiliza que dos o más partes acuerden por escrito llevar a arbitraje "cualquier controversia que pudiera ser objeto de una acción existente entre ellos a la fecha del convenio de someter a arbitraje; o podrán incluir en un convenio por escrito una disposición para el arreglo mediante arbitraje de cualquier controversia que en el futuro surgiere entre ellos de dicho acuerdo o en [sic] relación al mismo." 32 L.P.R.A. sec. 3201.

El profesor David M. Helfeld señala que aunque la Ley de Arbitraje Comercial se deriva de la Ley de Arbitraje Federal, 9 U.S.C. sec.1 y ss., la primera tiene un lenguaje más amplio que la segunda. D. M. Helfeld, La jurisprudencia creadora: Factor determinante en el desarrollo del derecho de arbitraje en Puerto Rico, 70 Rev. Jur. U.P.R. 1, 54, 123(2001).

Por un lado, la Ley de Arbitraje Federal limita su campo de acción a transacciones marítimas y comerciales. Define comercio como las transacciones entre estados o territorios de Estados Unidos, o entre éstos y países extranjeros. Excluye los contratos de empleo de marinos,

trabajadores de ferrocarriles y otros empleados involucrados en el comercio interestatal. 9 U.S.C. sec. 1.

Por otro lado, la Ley de Arbitraje Comercial se puede hacer extensiva mediante acuerdo entre las partes a cualquier controversia existente o a cualquier controversia que pudiera surgir en el futuro. "Por lo tanto, disputas legales en las áreas como daños y perjuicios, herencia y derecho de familia, entre otras no estrictamente de naturaleza contractual o comercial, están sujetas a la Ley Núm. 376". Helfeld, supra, pág. 54.

Este lenguaje amplio de la Ley de Arbitraje Comercial puede limitarse por legislación. En Walborg Corp. v. Tribunal Superior, 104 D.P.R. 184 (1975), sostuvimos la validez del Artículo 3-b de la Ley sobre Contratos de Distribución de Puerto Rico, Ley Núm. 75 de 1964, 10 L.P.R.A. 278b-2, a pesar de que declara nula toda estipulación que promueva el arbitraje. Sin embargo, revocamos ese dictamen quince años después, en World Films, Inc v. Paramount Pict. Corp., 125 D.P.R. 352 (1990). En este último caso declaramos inconstitucional el referido artículo de la Ley sobre Contratos de Distribución en Puerto Rico en la medida en que contradice la Ley de Arbitraje Federal. Así, actuamos conforme la jurisprudencia estadounidense que reconocía que la Ley de Arbitraje Federal ocupó el campo, y que los acuerdos de arbitraje sobre transacciones marítimas y comerciales cobijadas bajo el estatuto estadounidense prevalecen sobre las leyes locales que establezcan una política pública contraria.

Por otro lado, hemos sostenido leyes que excluyen el arbitraje como remedio en materias que quedan fuera del alcance de la Ley de Arbitraje Federal. Vélez v. Serv. Legales de PR, 144 D.P.R. 673 (1998). También hemos derogado leyes que imponen el arbitraje en contravención con nuestra Constitución. Vélez Ruiz v. E.L.A., 111 D.P.R. 752 (1981).

Precisamente en Vélez Ruiz v. E.L.A., id., declaramos inconstitucional el esquema de arbitraje obligatorio que estableció la Ley Núm. 74 de 30 de mayo de 1976 para casos de impericia médica. Llegamos a esa conclusión porque se usurpaban las funciones que la Constitución le confiere a la Rama Judicial, al hacer mandatorio el arbitraje y obligatorio el laudo. Eso removía el caso de los tribunales, por siempre.

A raíz de nuestra decisión, la Asamblea Legislativa aprobó la Ley Núm. 6 del 30 de diciembre de 1986, 26 L.P.R.A. sec. 4108. La enmienda al Código de Seguros lee:

§ 4108. Reclamaciones-Demanda

> Toda acción civil que surja de una reclamación de daños por culpa o negligencia por impericia profesional médico-hospitalaria (*malpractice*) se iniciará mediante la radicación de una demanda en la sala del tribunal competente. En estas acciones civiles, el tribunal tendrá discreción para someter la reclamación a arbitraje.

Con el beneficio de este marco jurídico, pasemos a contestar las interrogantes del Tribunal Federal para el Distrito de Puerto Rico.

III

"Puerto Rico tiene pleno poder para auspiciar y

reglamentar el arbitraje en áreas no cubiertas por la F.A.A. [Ley de Arbitraje Federal], tales [como] disputas que involucran daños y perjuicios, relaciones de la familia, y la herencia. Las palabras textuales de la Ley Núm. 376, no restringen su cobertura a las disputas comerciales, pero el entendimiento general ha sido a tal efecto". Helfeld, supra, pág. 123.

Coincidimos con la interpretación del profesor Helfeld. El Art. 1 de la Ley de Arbitraje Comercial, 32 L.P.R.A. sec. 3201, por sí solo, es lo suficientemente amplio como para abarcar el caso de marras, pero el Código de Seguros impide su aplicación a casos de impericia médica.

La Ley de Arbitraje Comercial se extiende a dos situaciones. La primera se trata de cuando las partes acuerdan ir a arbitraje por una controversia ya existente. La segunda, cuando en un convenio se incluye el arbitraje como mecanismo para atender "cualquier controversia que en el futuro surgiere entre ellos" relacionada a ese acuerdo.

La segunda situación abarca el caso de una persona que contrata a otra para recibir un bien o servicio, y pacta un procedimiento de arbitraje como contrato accesorio al principal, para resolver controversias que pudieran surgir en el futuro. Si no fuera por la excepción del Código de Seguros, ése podría ser el caso de un paciente que contrata a un médico para que le intervenga quirúrgicamente, y de antemano acuerdan un procedimiento de arbitraje para atender reclamaciones que pudieran surgir por impericia. En este caso, el legislador estableció una excepción al arbitraje

como cuestión de política pública, a través de la enmienda al Código de Seguros de 1986. Esta excepción requiere que toda reclamación de daños por culpa o negligencia por impericia médica, se inicie con la presentación de una demanda civil en el tribunal competente y de ahí, el tribunal tiene discreción para activar un panel de árbitros.

El lenguaje que utilizó la Asamblea Legislativa en ese artículo es más amplio que el del caso que lo inspiró. En Vélez Ruiz v. E.L.A., supra, declaramos inconstitucional un esquema de arbitraje que removía los casos presentados en el tribunal, para llevarlos a un panel de árbitros. El esquema era mandatorio y el laudo del panel de árbitros era final y obligatorio. El caso nunca regresaba al tribunal. Así, se usurpaban los poderes de la Rama Judicial, en violación del Art. V de la Constitución.

La enmienda al Código de Seguros que se aprobó en 1986 como consecuencia de nuestra decisión en Vélez Ruiz v. E.L.A., supra, determinó que toda reclamación por impericia médica tiene que comenzar con una demanda ante los tribunales. Aunque el lenguaje es más amplio que nuestra disposición en Vélez Ruiz v. E.L.A., id., entendemos que su texto cae dentro de las prerrogativas de la Asamblea Legislativa, toda vez que no invade el campo que ocupó la Ley de Arbitraje Federal.

Otro asunto es si un paciente realmente está en posición de consentir al arbitraje como parte del proceso de contratación de un médico. El Tribunal señala que esto violenta el derecho del paciente "al consentimiento

informado sobre lo que vaya o no a hacerse sobre su cuerpo". Sin embargo, el acuerdo de arbitraje es accesorio, para resolver controversias legales entre el médico y la paciente, y no tiene que ver con el consentimiento y el entendimiento de la paciente con respecto al alcance de la operación, sus riesgos y consecuencias. Es a eso a lo que se refiere la doctrina de consentimiento informado. Ésta "impone al médico el deber de informar a su paciente acerca de la naturaleza y riesgos de un tratamiento médico propuesto, de manera que el paciente se encuentre en la posición de hacer una decisión inteligente e informada". Rodríguez Crespo v. Hernández, 121 D.P.R. 639, 664 (1988). Véanse, además, Lozada Tirado et al. v. Testigos Jehová, Opinión de 27 de enero de 2010, 2010 T.S.P.R. 9, 2010 J.T.S. 11, 177 D.P.R. ___ (2010); Sepúlveda de Arrieta v. Barreto, 137 D.P.R. 735 (1994).

El Tribunal señala también que el acuerdo de arbitraje entre la señora Martínez Marrero y el doctor González Droz atenta contra el orden público "porque propone resolver un reclamo de impericia médica por la vía contractual cuando estos casos se atienden a la luz del derecho de responsabilidad extracontractual".

Es harto conocida la diferencia entre las acciones contractuales y las extracontractuales. Entre estas últimas se encuentran las reclamaciones de indemnización por los daños y perjuicios sufridos, por culpa o negligencia. Véanse, Ramos v. Orientalist Rattan Furniture, 130 D.P.R. 712 (1992); E.L.A. v. Soto Santiago, 131 D.P.R. 304 (1992).

Sin embargo, eso no impide que los casos de daños extracontractuales concluyan mediante transacción. E.g., Sagardía de Jesús v. Hosp. Aux. Mutuo, Opinión de 12 de noviembre de 2009, 2009 T.S.P.R. 173, 2009 J.T.S. 176, 177 D.P.R. ___ (2009). "Este contrato—descrito por Scaevola como un 'instrumento de paz alcanzada' – es consensual, recíproco y oneroso. En éste, las partes, mediante sacrificios mutuos, finiquitan una controversia con el propósito de evitar los pesares que conllevaría un litigio". US Fire Insurance v. A.E.E., Opinión de 24 de septiembre de 2008, 2008 T.S.P.R. 160, 2008 J.T.S. 180, 174 D.P.R. ___ (2008). Por su naturaleza, la transacción está sujeta a las normas de interpretación de contratos. Orsini García v. Méndez, Opinión de 18 de diciembre de 2009, 2009 T.S.P.R. 190; López Tristani v. Maldonado, 168 D.P.R. 838 (2006). Sin embargo, la manifestación del Tribunal en el caso de autos pone en duda la legitimidad de las transacciones en los casos de daños extracontractuales, pues estos acuerdos también buscan resolver por la vía contractual una reclamación por responsabilidad extracontractual.

De todos modos, entiendo que es innecesario entrar en estas cuestiones en este momento porque el análisis integrado de las leyes aplicables resuelve la controversia de este caso y excluye el arbitraje como alternativa para los casos de impericia médica.

De esta forma, contestamos en la negativa a la primera pregunta que certificó el Tribunal Federal para el Distrito de Puerto Rico. No es válido en Puerto Rico un acuerdo de

arbitraje entre un médico y un paciente para atender reclamaciones futuras por impericia médica. La contestación a la primera interrogante hace innecesario responder a la segunda, pues como la ley actual prohíbe contratar una cláusula de arbitraje compulsorio en casos de impericia médica, no tenemos que definir los límites de semejante acuerdo.

IV

En conclusión, la amplitud del lenguaje de la Ley de Arbitraje Comercial podría cobijar una situación como la de este caso, si no fuera por la enmienda que se hizo al Código de Seguros en 1986. El Art. 41.080 del Código, supra, tuvo el efecto de establecer como política pública que toda reclamación civil por impericia médica comienza con una demanda civil en los tribunales. Por no tratarse de un área cobijada por la Ley de Arbitraje Federal la Asamblea Legislativa puede establecer válidamente una excepción al arbitraje en estos casos.

Ya que este análisis resuelve la controversia concurro respetuosamente con la Opinión del Tribunal.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado